A99A0550. HOWARD v. McFARLAND et al.
(515 SE2d 629)

BEASLEY, Presiding Judge.

Water damaged the residence of Darryl and Joann McFarland and some of its contents. They discovered their house was located in a flood plain and sued the Dunns, from whom they bought the house, and Gregory Howard, the original builder. Evidence showed that Howard knew the house was in a flood plain when he built it in 1988 and that the Dunns were keenly aware of the problem before selling to the McFarlands in 1995.

Asserted against Howard were three claims: fraud (concealing the flood plain problem); vicarious liability (contracting for two surveys of the property, neither of which addressed the flood plain issue); and negligent construction (building the house in a flood plain without proper elevation). He appeals from the denial of his motion for summary judgment on all claims.

1.

The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. For an action for fraud to survive a motion for summary judgment, there must be

some evidence from which a jury could find each element of the tort.[1]

Setting aside the question of whether the other elements of fraud are shown, we need focus only on the "justifiable reliance" element. To avoid summary judgment, the McFarlands must show they exercised due diligence to protect themselves from the alleged fraud.[2]

*Copeland v. Home Sav. of America, F.A.*[3] affirmed summary judgment on this ground where a home buyer sued (i) the real estate agent who had falsely denied any flooding problems and (ii) the surveyor whose survey had failed to disclose the property was located in a flood plain. A creek ran adjacent to the property, and county records confirmed that the house was in a flood hazard area.

> The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity. When the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's representations. [Cits.] *Miller v. Clabby*, 178 Ga. App. 821, 823 (344 SE2d 751) (1986).[4]

In *Copeland*, as in *Miller*,

> the possibility of a risk of flood hazard was patent, inasmuch as the property was situated adjacent to a creek. Because of Copeland's failure to make any attempt to discover the reality of that risk despite the opportunity to do so, she cannot be said to have justifiably relied upon any representation by the defendants regarding the matter.[5]

Thus, the court properly granted summary judgment to defendants.

---

[1] (Citation omitted.) *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989); see OCGA § 51-6-1; *Simpson Consulting v. Barclays Bank PLC*, 227 Ga. App. 648, 650 (1) (490 SE2d 184) (1997).

[2] *Crawford*, supra, 258 Ga. at 807-808.

[3] 209 Ga. App. 173 (433 SE2d 327) (1993).

[4] (Punctuation omitted.) Id. at 174-175; see *Smith v. Stanley*, 223 Ga. App. 334, 335 (477 SE2d 618) (1996) (grading of area suggested rain water would be directed toward house; summary judgment on fraud count required in favor of sellers); *Real Estate Intl. v. Buggay*, 220 Ga. App. 449, 451-452 (2) (469 SE2d 242) (1996) (inspection report indicated drainage problems; summary judgment on fraud count required in favor of realtor).

[5] 209 Ga. App. at 175.

A party who is alerted to a potential realty problem that can be confirmed by a review of public records may not claim fraud based on the representations or silence of others to the transaction.[6] "It is presumed that a purchaser has examined every deed and instrument affecting the title. He is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed."[7]

Plainly visible to the naked eye, and as reflected in one of the surveys commissioned by Howard and recorded in the county records, a creek traversed the property. This put the McFarlands on notice of a potential flood hazard problem. The county's flood insurance rate map available on the public record confirmed that the property was in the middle of a flood plain. The McFarlands could not justifiably rely on Howard's silence or on the silence of the surveys he commissioned. Although a third survey done for the McFarlands at the time of the 1995 closing was misleading on this issue, Howard had nothing to do with its creation and cannot be held responsible for it, especially since it purported to rely on the county's flood map with no reference to the prior surveys. Denial of summary judgment on the fraud claim was error.

2. The McFarlands claim Howard is vicariously liable for the negligence of his hired surveyors who failed to disclose the flood plain problem. Setting aside the question of whether Howard is responsible for the actions of the surveyors, we focus first on whether the surveyors themselves would be liable. The amended complaint alleges only that the surveyors negligently failed to note the flood plain problem. Because the McFarlands were not in privity with the surveyors, nor with Howard for that matter, the surveyors would be liable only under a theory of negligent misrepresentation.[8]

This theory fails for the same reason as does the fraud claim.

As the same principles apply to both fraud and negligent misrepresentation, justifiable reliance is also an essential element of a claim asserting negligent misrepresentation. Therefore, [the McFarlands'] failure to exercise due diligence, as a matter of law, also bars [their] negligent misrepresentation claim.[9]

Defendants were entitled to summary judgment on this claim.

---

[6] *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732) (1991).

[7] (Citations and punctuation omitted.) Id.

[8] See *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983).

[9] (Citations omitted.) *Buggay*, supra, 220 Ga. App. at 452 (3).

3. The McFarlands' final claim against Howard is that he negligently constructed a house in a flood plain without proper elevation, which caused water damage to the house and to personal property in the house. This claim fails for several reasons.

(a) Regarding damage to the house itself, the applicable statute of limitation is OCGA § 9-3-30, which bars actions for damage to realty brought more than four years after the right of action accrues.

> A cause of action by a property owner for damage to a building resulting from negligent construction or design accrues at the time of the completion of the building. . . . [T]his is true, notwithstanding the fact that the plaintiff had no knowledge of such wrongs having been committed until the roof collapsed some four years later. Mere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitation.[10]

The McFarlands acknowledge that *Corp. of Mercer Univ. v. Nat. Gypsum Co.*[11] concluded that "[n]either the discovery rule nor the continuing tort theory is applicable to actions involving only property damage."[12] Nevertheless, they argue that the existence of OCGA § 9-3-51, which is an eight-year statute of repose for such actions, extends the four-year statute of limitation[13] to eight years for subsequent purchasers of the realty who discover the problem within four years of bringing suit. They point to the special concurrence of Justice Bell in *Mercer*, in which he states he would apply the discovery rule in instances where there is a statute of repose.[14]

Three times has this Court rejected this argument.[15]

---

[10] (Citations and punctuation omitted.) *Millard Matthews Builders v. Plant Improvement Co.*, 167 Ga. App. 855 (307 SE2d 739) (1983); see *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (1) (368 SE2d 732) (1988) ("[a]n action under OCGA § 9-3-30 must be brought within four years of substantial completion"); *Heffernan v. Johnson*, 209 Ga. App. 139, 140 (1) (433 SE2d 108) (1993) ("the right of action accrues at the time of substantial completion of the project") (citation omitted).

[11] Supra.

[12] *Heffernan*, supra, 209 Ga. App. at 140 (1).

[13] OCGA § 9-3-30.

[14] See 258 Ga. at 366.

[15] *Armstrong v. Royal Lakes Assoc.*, 232 Ga. App. 643, 645 (1) (502 SE2d 758) (1998) ("[w]e have previously rejected the contention that *Mercer*, which requires that an action for damage to realty be brought within four years of substantial completion, does not apply to a case in which a statute of ultimate repose is applicable"); *Hanna v. McWilliams*, 213 Ga. App. 648, 650 (2) (a) (446 SE2d 741) (1994) ("[t]he discovery rule no longer applies to suits merely for real property damage; this is true whether a statute of repose exists"); *Ft. Oglethorpe Assoc. II, Ltd. v. Hails Constr. Co.*, 196 Ga. App. 663, 665 (3) (396 SE2d 585) (1990) ("[w]e reject plaintiff's argument that the *Mercer* case does not apply to a case, such as this one, where a statute of repose applies").

The purpose of the statute of repose is to impose an outside limit on the bringing of lawsuits which are otherwise brought within the applicable statutory period after the action has accrued. See OCGA § 9-3-53. The Georgia courts have never interpreted the statute of repose for construction cases as extending the otherwise applicable period of limitation. It is clear from a reading of OCGA § 9-3-53 that the legislature never intended OCGA § 9-3-51 to establish a new eight year statute of limitation in place of the two, four and six years statutes that may be applicable depending on the cause of action alleged.[16]

The McFarlands do not allege fraudulent concealment under OCGA § 9-3-96 that would toll the statute of limitation. "To toll the statute of limitation, concealment of a cause of action must be by positive affirmative act and not by mere silence."[17] No such averments are made.

(b) Regarding damage to the McFarlands' personal property, the statute of limitation began to run at a later time. An action for damage to personal property resulting from negligent construction does not accrue until the actual injury to that property occurs.[18] Because that injury did not occur until after the McFarlands purchased the property in 1995, the filing of this action in 1996 fell within the four-year statute of limitation for damage to personalty.[19]

Howard contends this claim must fail for failure to provide expert testimony. "It is well established that plaintiffs in a negligent construction case must establish the standard of care applicable to the defendant builder by the introduction of expert testimony."[20] The McFarlands submitted the affidavit of Garvin Dreger, who deposed that based on his review of (i) the affidavits filed in the case and (ii) the "complete file of the Building Department for Coweta County, Georgia" regarding the property, he believed Howard did not properly elevate the house to prevent flooding. He did not attach the referenced file to his affidavit.

Howard objected to the affidavit, arguing that the failure to

---

[16] (Citation and punctuation omitted.) Id.

[17] (Citation omitted.) *Comerford v. Hurley*, 154 Ga. App. 387, 388 (268 SE2d 358) (1980); see *Wilson v. Phillips*, 230 Ga. App. 290-291 (495 SE2d 904) (1998); *Moore v. Meeks*, 225 Ga. App. 287, 288 (2) (483 SE2d 383) (1997).

[18] *Millard Matthews Builders*, supra, 167 Ga. App. at 855; see *Hanna*, supra, 213 Ga. App. at 650-651 (2) (b).

[19] OCGA § 9-3-31.

[20] (Citations omitted.) *Newberry v. D. R. Horton, Inc.*, 215 Ga. App. 858 (1) (452 SE2d 560) (1994); see *Rentz v. Brown*, 219 Ga. App. 187, 188 (464 SE2d 617) (1995) ("the standard of care must be established through expert testimony") (citation omitted).

attach the file rendered the affidavit insufficient under OCGA § 9-11-56 (e). Without addressing this specific point, the court denied summary judgment. Howard claims the court erred. The affidavit is insufficient only if the "records relied upon and referred to . . . are neither attached to the affidavit nor included in the record and clearly identified in the affidavit."[21] Included in the record is an affidavit of the office manager of the building department attaching a copy of the department's "entire business records" regarding the property. Dreger's affidavit, which identified the complete file of the department, was sufficient.

Nevertheless, the claim fails for want of proximate cause.

> It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's acts, and which was sufficient of itself to cause the injury. In other words, if the author of the latter negligence, with the intermediate effects of the former negligence consciously before him, is guilty of a new negligent act which preponderates in producing the injurious effect, we say that the first negligent cause is not the proximate cause, that the intervention of the latter negligence breaks the chain of causal connections so far as juridic purposes are concerned.[22]

Based on this rationale, *Seely v. Loyd H. Johnson Constr. Co.*[23] held that negligent construction by the original builder was not the proximate cause of the plaintiff's water damages where the plaintiff had discovered the leak and the builder had then contracted R & R Plumbing to repair it. "The alleged negligent failure of R & R Plumbing to fix the leak after it was discovered intervened between the prior acts and became the sole proximate cause, if any, of the . . . subsequent property damage."[24]

After experiencing water problems, the Dunns became aware the property was in a flood plain. According to the amended complaint, they falsely denied any water problems when selling the property to

---

[21] (Citations and punctuation omitted.) *Taquechel v. Chattahoochee Bank,* 260 Ga. 755, 756 (2) (400 SE2d 8) (1991); *Pratt v. Tri City Hosp. Auth.,* 193 Ga. App. 473, 474 (388 SE2d 69) (1989); see generally OCGA § 9-11-56 (e) ("[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith").

[22] (Citations and punctuation omitted.) *Black v. Ga. Southern & Fla. R. Co.,* 202 Ga. App. 805, 807 (1) (415 SE2d 705) (1992).

[23] 220 Ga. App. 719, 722 (1) (470 SE2d 283) (1996).

[24] Id.

the McFarlands. These intermediate actors had the effects of Howard's negligence consciously before them and nevertheless committed a fraudulent act which preponderated in producing the injurious effects to the McFarlands' personal property. This was not foreseeable by Howard. The new act having broken the causal chain, Howard's negligence could not be the proximate cause.

Summary judgment was demanded on the personal property damages claim as well.

*Judgment reversed. Blackburn, J., concurs. Barnes, J., concurs in judgment only.*

DECIDED APRIL 1, 1999.

*Louis K. Polonsky*, for appellant.
· *R. Keith Prater*, for appellees.