S04G2110. SCULLY et al. v. 1ST MAGNOLIA HOMES, INC. et al.

(614 SE2d 43)

SEARS, Presiding Justice.

This appeal arises from a suit alleging that the appellees negligently installed synthetic stucco siding on appellants Kerry and Mark Scully's home. The Scullys appeal the affirmance of the grant of summary judgment in favor of appellee 1st Magnolia Homes and its president Henry Burns, arguing that the Court of Appeals erred by concluding that their claims for breach of contract and negligence were barred by the applicable statutes of limitation. As explained below, we conclude that the Court of Appeals incorrectly held that the statute of limitations for the Scullys' breach of contract claim commenced running when a purchase and sale agreement was executed, rather than when the sale was closed. The Court of Appeals, however, correctly held that the statute of limitations for the Scullys' tort claim commenced running when the Scullys, through the exercise of reasonable diligence, should have discovered that their home was being

damaged due to defective synthetic stucco siding. Accordingly, we affirm in part and reverse in part.

On September 8, 1996, the Scullys entered into a New Construction Purchase and Sale Agreement with 1st Magnolia to purchase a model home that had already been constructed. The sale closed on October 10, 1996.

Within a year of moving into the home, the Scullys became aware through media accounts that faulty stucco siding installed on homes such as theirs was causing moisture damage to houses. In November 1997, the Scullys asked a real estate agent, their neighbor Pamela Gebhart, whether they should be concerned about the stucco siding on their house and whether it should be replaced. Gebhart replied that in her opinion, concerns about faulty stucco installation and resulting moisture damage, though not entirely baseless, were exaggerated at that time.

The Scullys did nothing further until November 1999, when — prompted by continuing media accounts and the fact that several of their neighbors had repaired the stucco siding on their homes — they hired an expert who informed them that the synthetic stucco siding on their house was defective and had caused damage to the underlying structure.

On October 8, 2002, the Scullys filed suit against 1st Magnolia and Burns, alleging breach of contract and negligence. The trial court entered summary judgment in favor of the defendants, ruling that the breach of contract claim was barred by the applicable six-year statute of limitations[1] and the tort claim was barred by the applicable four-year statute of limitations.[2] The Court of Appeals affirmed,[3] upholding the trial court's finding that the statute of limitations began to run on the breach of contract claim when the parties signed the Purchase and Sale Agreement on September 8, 1996. Similarly, the appellate court affirmed the trial court's finding that the Scullys were on notice of problems with their synthetic stucco siding as of November 1997, at which point the four-year statute of limitations for their negligence claim began to run.

1. The general rule for determining when a cause of action accrues and the statute of limitations begins to run is well-settled in Georgia: "The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained [his or] her action to a successful result."[4] An obvious corollary of this

---

[1] See OCGA § 9-3-24.

[2] See OCGA § 9-3-30 (b).

[3] *Scully v. 1st Magnolia Homes*, 268 Ga. App. 892 (603 SE2d 312) (2004).

[4] *Travis Pruitt & Assoc. v. Bowling*, 238 Ga. App. 225, 226 (518 SE2d 453) (1999). See also OCGA § 9-3-24 ("All actions upon simple contracts in writing shall be brought within six years after the same become due and payable.").

maxim is the fact that plaintiffs in the Scullys' position can have no cause of action for damage to their house until some form of harm has been incurred for which redress may be sought.

In its opinion, the Court of Appeals held that the statute of limitations on the Scullys' breach of contract claim was triggered when the Scullys executed the purchase and sale agreement. In reaching this conclusion, the Court held that damage to property arising out of faulty construction is generally considered to occur on the date of the project's "substantial completion, i.e., when the certificate of occupancy is issued."[5] Because the house at issue here had already been substantially completed when the Scullys entered into the purchase and sale agreement, the Court of Appeals reasoned that the statute of limitations began running when the agreement was executed.

In situations where a plaintiff owns property being improved by a defendant contractor, damage to the property arising out of faulty construction is considered to occur at the time of the defendant's substantial completion of the project, because such damage normally is ascertainable to the plaintiff at that time.[6] As we have recently held, however, this general rule of substantial completion is not applicable under the circumstances presented in this appeal.

This is not a case in which a plaintiff owned the property being improved at the time of substantial completion.[7] Rather, the home purchased by the Scullys was substantially completed well before title to the property was conveyed to them. At the time of substantial completion, the property at issue was still owned by 1st Magnolia, who obviously could not have brought an action alleging defective construction against itself, as it did not suffer any injury.[8] For this reason, we have held that in cases where it is alleged that a new house was defectively constructed by an owner/builder for the purpose of sale and the house was actually sold, the only party who can suffer injury and thus can successfully bring an action seeking relief is the purchaser and/or his successors.[9] Therefore, where "a contractor makes improvements to his own real property for the express purpose of sale and the property actually is sold, the applicable period of limitations for claims of damage to realty does not begin to run until

---

[5] *Scully*, 268 Ga. App. at 893, citing *Hickey v. Bowden*, 248 Ga. App. 647, 649-650 (548 SE2d 347) (2001).

[6] See *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251 (569 SE2d 495) (2002).

[7] See *Travis Pruitt & Assoc.*, 238 Ga. App. at 226 (discussing cases involving the alleged defective construction and design of a plaintiff's own property).

[8] See *Colormatch Exteriors*, 275 Ga. at 251.

[9] Id.

the initial sale of the improved property [i.e., the date of purchase], regardless of the date of 'substantial completion.' "[10]

Accordingly, the trial court and the Court of Appeals erred in holding that the statute of limitations on the Scullys' breach of contract claim began to run on September 8, 1996, when they entered the contract to purchase the house. As explained above, the statute was not triggered until the actual sale of the house, which occurred on October 10, 1996. The Scullys' suit, filed on October 8, 2002, was brought within the applicable six-year limitations period, and thus was timely.

2. A lawsuit alleging the negligent installation of synthetic stucco siding and resulting damage must be filed no later than four years after "damage to the dwelling is discovered or, in the exercise of reasonable diligence, should have been discovered, whichever first occurs."[11] By their own admission, the Scullys were aware of potential problems with their stucco siding no later than November 1997. Once they learned of this potential problem, they were obligated to exercise reasonable diligence to protect their interest in their home and their legal rights. At the same time, the four-year statute of limitations on their negligence claim began to run. The statute expired in November 2001, and the Scullys' suit alleging negligence was filed almost a year later, on October 8, 2002. It follows that the trial court and the Court of Appeals properly concluded that 1st Magnolia was entitled to a grant of summary judgment on the Scullys' negligence claim.[12]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MAY 23, 2005.

*Charles F. Peebles*, for appellants.
*Pursley, Lowery & Meeks, John C. Amabile, David R. Perry*, for appellees.
*Brown & Shamp, Robert H. Brown III*, amicus curiae.

---

[10] *Colormatch Exteriors*, 275 Ga. at 250. Although the underlying suit in *Colormatch* involved only claims in tort, the opinion addresses the "applicable period[s] of limitations for claims of damages to realty." Id.

[11] OCGA § 9-3-30 (b) (1). Although questions of reasonable diligence must often be resolved by the trier of fact, such is not always the case, as "[a] party may fail to exercise due diligence as a matter of law." *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 360 (518 SE2d 154) (1999).

[12] See *Miller v. Clabby*, 178 Ga. App. 821, 823 (344 SE2d 751) (1986) (" 'The law does not afford relief to one who suffers by not using the ordinary means of information [to protect his or her interests], whether the neglect is due to indifference or credulity.' ").